UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ISMAEL GOMEZ ZELAYA, | ) | NO. EDCV 13-333 AGR |
| Plaintiff, | ) | |
| v. | ) | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) | MEMORANDUM OPINION AND ORDER |
| Defendant. | ) | |

Plaintiff Ismael Gomez Zelaya filed this action on March 1, 2013. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 6, 8.) On September 20, 2013, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

**I.**

## PROCEDURAL BACKGROUND

On April 14, 2010, Zelaya filed an application for disability insurance benefits, alleging an onset date of January 26, 2009. Administrative Record ("AR") 12. The application was denied initially and upon reconsideration. AR 12, 68-69. Zelaya requested a hearing before an Administrative Law Judge ("ALJ"). On January 24, 2012, the ALJ conducted a hearing at which Zelaya and a vocational expert ("VE") testified. AR 35-67. On February 23, 2012, the ALJ issued a revised decision denying benefits.[1] AR 9-20. On January 10, 2013, the Appeals Council denied the request for review. AR 1-3. This action followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

---

[1] A revised decision was issued to address recently submitted evidence. AR 12.

2

# III.
# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Zelaya met the insured status requirements through March 31, 2014. AR 14. Zelaya had the severe impairments of cervical myofascial strain and sequelae of right ankle fracture. *Id.* He had the residual functional capacity ("RFC") to perform medium work[2] except he could frequently climb, stoop, kneel and crouch. AR 17. The ALJ found that Zelaya could perform his past relevant work as a light truck driver as it is generally performed. AR 19. Alternatively, the ALJ found there were other jobs that existed in significant numbers that Zelaya could perform. *Id.*

## C. Treating Physicians

Zelaya contends the ALJ improperly considered his medical record.

An opinion of a treating physician is given more weight than the opinions of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v.*

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

3

*Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

The medical records consist primarily of records from Zelaya's workers' compensation proceedings. An ALJ "may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). "Instead, the ALJ must evaluate medical opinions couched in state workers' compensation terminology just as he or she would evaluate any other medical opinion." *Id.*

In that regard, "it is important to distinguish between those portions of the physicians' reports that represent the physicians' medical findings and those portions of the reports that represent conclusions as to the claimant's disability for purposes of worker's compensation." *Coria v. Heckler*, 750 F.2d 245, 247 (9th Cir. 1984). Because the tests for Social Security disability and workers' compensation are different, "the ALJ could reasonably disregard so much of the physicians' reports as set forth their conclusions as to [the claimant's] disability for worker's compensation purposes." *Id.* "On the other hand, the physicians' findings, *qua* findings, do not necessarily suffer from similar defects." *Id.* at 248. "[T]he ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same

4

standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim, unless there is some reasonable basis to believe a particular report or finding is not entitled to comparable weight." *Id.*

Zelaya worked as a truck driver and delivery person. In 2007, while unloading stoves from the truck, the stoves slipped and fractured his right foot. He had surgery on his right foot and ankle. AR 301, 302. He returned to work with restrictions and worked until January 26, 2009, the alleged onset date. AR 302. Zelaya explained that when he was required to go up three or four floors to make deliveries, his pain increased, became more persistent and radiated to the sole of his foot. *Id.*

In October 2008, Dr. Schiffman noted that Zelaya recently had epidural injections in the cervical spine with good results. AR 292. An EMG report indicated bilateral moderate to severe carpal tunnel syndrome and an early bilateral canal of Guyon entrapment. AR 293. Examination of the wrists revealed a positive Tinel sign of the median and ulnar nerves on the right, and negative Tinel sign on the left. *Id.* Dr. Schiffman diagnosed post traumatic cervical sprain/strain with multi-level disc bulges per MRI, and moderate to severe bilateral carpal tunnel syndrome. *Id.*

Progress reports from Zelaya's treating chiropractor indicate that Zelaya could return to work in October 2008, with the following restrictions: walking no more than one hour at a time with 15 minutes rest; driving no more than four hours at a time with 30 minutes rest; and no lifting, pushing, or pulling 30 pounds or more. AR 260, 272-80. Zelaya continued with epidural injections in the cervical spine in December 2008 and February 2009. AR 298-99, 330-31.

Zelaya returned to work with restrictions until January 26, 2009, the alleged onset date. AR 302. In February 2009, Zelaya complained of throbbing pain in his right foot and ankle radiating up to his right knee. Because he was supporting himself on his left foot to walk, Zelaya had low back pain with more

than one hour of walking, prolonged driving and standing. AR 303. Dr. Jarminski observed, however, that Zelaya walked with a normal gait. *Id.* Zelaya clarified that he began to have pain with prolonged standing or walking. AR 304. Dr. Jarminski noted that the hardware caused a slight palpable deformity on the fracture site with some pain and guarding. *Id.* Dr. Jarminski prescribed orthotics and medication, and referred Zelaya for consultation as to possible removal of the fixation screws in the right ankle. AR 304, 336.

In August 2009, Dr. Rahman asked the workers' compensation carrier for authorization to remove the screws from the ankle. AR 333-34. Dr. Rahman noted tenderness over the incision area where the screws were located, as well as limited flexion. AR 333. Dr. Rahman stated that conservative treatment would continue until surgical removal of the hardware was authorized. AR 334. During the time frame of April 2009-January 2010, Dr. Jarminski noted Zelaya's reports of moderate right ankle pain with prolonged driving, walking and standing, and moderate low back pain with prolonged standing.[3] AR 336-41.

Apparently, the insurer twice denied requests for surgical removal of the hardware in the right ankle on October 22, 2009 and January 8, 2010. Dr. Jung responded that the head of the screw was palpable under the skin, rubbed against the shoe and caused pain. AR 379. In March 2010, the hardware from the right ankle was surgically removed. AR 388. Two weeks later, Zelaya healed well, had range of motion without pain, and reported minimal pain to the surgical site. AR 390. The next follow-up visit indicated possible superficial infection with slight redness and swelling. AR 391. Dr. Jung recommended that Zelaya be temporarily totally disabled until May 10, 2010. *Id.*

---

[3] On July 28, 2009, Zelaya also reported pain in the left knee due to overuse in compensating for the right ankle. AR 338. Zelaya did not repeat this complaint in subsequent visits. AR 339-41.

6

On May 14, 2010, Zelaya reported a significant decrease in pain after the right ankle surgery. He denied pain with walking or standing, and denied instability. The incision was well healed and range of motion was without pain. Dr. Jung did not recommend further treatment and advised Zelaya to walk and perform activities to tolerance. AR 393.

In April 2010, MRIs of the lumbar spine revealed a 2 to 3 mm central disc protrusion at the L4-L5 disc level and a 3 mm posterior disc protrusion at the L5-S1 disc level. Disc dessication was present at both levels. Moderate to severe hypertrophic facet changes were present at L4-L5, and moderate hypertrophic facet changes were present at L5-S1. Lateral recess stenosis was present bilaterally. AR 366.

The ALJ gave great weight to the opinion of the examining physician, Dr. Flanagan, who examined Zelaya on June 14, 2010.[4] AR 30, 223-29. Dr. Flanagan reviewed Zelaya's subjective complaints, which included neck pain; lower back pain; wrist and hand pain; hip, knee and ankle pain; right foot pain; and chest pain.[5] AR 223-24. Dr. Flanagan noted the two right ankle surgeries in 2007 and 2010. AR 224. Dr. Flanagan observed that Zelaya sat and stood with normal posture, rose from a chair without difficulty, had a normal gait, and got on and off the examining table without difficulty. AR 225. Neck examination revealed tenderness upon palpation of the cervical paraspinal muscles bilaterally

---

[4] Contrary to Zelaya's argument, the ALJ discounted the opinions of the state agency physicians as to Zelaya's physical impairments. AR 30. The ALJ discounted the chiropractor because he is not an acceptable medical source. AR 14.

[5] Zelaya argues that the ALJ erred at step two of the sequential analysis by failing to find that he had severe impairments of low back pain and carpal tunnel syndrome. However, any error at step two would be harmless. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). The RFC takes into account limitations imposed by all impairments, even those that are not severe. *Id.* at 683 (citing SSR 96-8p). Moreover, Zelaya was returned to work with restrictions after being diagnosed with neck strain and carpal tunnel syndrome, and after complaining of low back pain. AR 260, 272-80, 292-93.

as well as over the spinous process. There was full range of motion, no swelling or inflammation, and no muscle atrophy or spasm. *Id.* Examination of the back revealed no tenderness, no muscle spasm, no pain with axial rotation of the trunk and axial loading of the spine at the head, and full range of motion. *Id.* Examination of the upper extremities was normal, and examination of the lower extremities was normal except for pain upon palpation of the medial aspect of the right ankle. AR 225-26. Dr. Flanagan found smooth range of motion in all joints except the neck. AR 226. Motor strength, sensation and reflexes were within normal limits, and straight leg raising was negative bilaterally. AR 226-27.

Dr. Flanagan diagnosed cervical myofascial strain and sequelae of the right ankle fracture. Despite Zelaya's subjective complaints of pain in other areas, Dr. Flanagan noted that there was nothing that suggested pathology in other areas. Dr. Flanagan questioned Zelaya as to why he did not have pain in other areas, and Zelaya responded that his pain was intermittent. AR 227. Dr. Flanagan opined that Zelaya was capable of medium work except for frequent climbing, stooping, kneeling and crouching. *Id.*

Zelaya argues that Dr. Flanagan did not have an opportunity to review his medical records, which were submitted later. An examining physician's opinion constitutes substantial evidence when, as here, it is based on independent clinical findings. *Orn*, 495 F.3d at 632. Zelaya does not cite any authority that would preclude reliance on an examining physician's opinion based on the absence of medical records.[6] The ALJ reviewed the treatment records and concluded that Dr. Flanagan's report was consistent with them. AR 16-17.

---

[6] Indeed, the regulations provide that the Commissioner may order a consultative examination when it does not obtain the information needed from a claimant's medical sources. 20 C.F.R. § 404.1519a. The regulations appear to require that the examining physician take a medical history from the claimant. *Id.* § 404.1519n(a). Dr. Flanagan did so and reviewed Zelaya's Adult Disability Report. AR 223-24; *see* AR 150-58.

8

Zelaya testified that he can lift about 30 pounds. AR 54. Medium work requires lifting up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c). Even assuming the ALJ should have included a limitation to lifting up to 30 pounds occasionally and frequently, any error would be harmless. *See McLeod v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2011) (party challenging agency determination has burden to show prejudice from alleged error). The ALJ alternatively found, based on the VE's testimony, that there were other medium jobs that existed in significant numbers that Zelaya could perform. AR 19. The VE testified that a limitation to lifting 30 pounds would erode the job base by 80%. AR 64. The VE identified representative occupations of hand packager (6,000 jobs regionally and 80,000 jobs nationally), machine feeder (3,000 jobs regionally and 50,000 jobs nationally) and industrial cleaner (2000 jobs regionally and 30,000 jobs nationally). AR 62-63. Even assuming erosion of the job base by 80%, the ALJ's finding at step five of the sequential analysis would remain valid. *See Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (whereas 135 regional jobs and 1,680 national jobs are not "significant", 1,266 regional jobs is a significant number); *Thomas*, 278 F.3d at 960 (1,300 jobs in Oregon is significant number). An ALJ may rely on a VE's testimony regarding the number of jobs. *Bayliss*, 427 F.3d at 1218.

This court is not free to re-weigh the medical evidence. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

**E.     Credibility**

Zelaya contends the ALJ failed to properly assess his credibility.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an

9

underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Zelaya's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AR 18.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing SSR 88-13) (quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

The ALJ found that Zelaya's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC. AR 18. The ALJ discounted Zelaya's credibility based on four reasons: (1) Zelaya stopped working when his job activities exceeded his work restrictions; (2) Zelaya did not seek therapy or

10

medications for his alleged mental impairments; (3) Zelaya's activities of daily living were inconsistent with his subjective allegations of physical impairments; and (4) the objective evidence did not support the severity of the symptoms. AR 18-19.

The ALJ concluded from the record that Zelaya stopped working because his work activities exceeded his work restrictions and not because he was incapable of medium work or prolonged driving, standing or walking. AR 18-19, 56; *see* AR 185 (delivery of heavy stoves, refrigerators, washing machines, dryers), 302 (after returning to work with restrictions, he was required to climb three or four floors to make deliveries). The VE acknowledged that Zelaya could not return to his past relevant work as it was actually performed at the heavy or very heavy level. AR 60, 62. The ALJ found that Zelaya could perform his past relevant work only as it was generally performed. AR 19.

Zelaya admitted he was not receiving therapy for depression or anxiety, and was not taking psychiatric medications. AR 18, 48, 53. An unexplained or inadequately explained failure to obtain treatment is a valid consideration in determining credibility. *See Orn*, 495 F.3d at 636.

With respect to activities of daily living, Zelaya testified he drove his wife to work 30 miles away and picked her up, cleaned the yard (including trimming trees and grass), cleaned the house (including sweeping and mopping), did laundry and did grocery shopping. AR 18, 54-55. Contrary to Zelaya's arguments, this evidence is relevant to the question of whether Zelaya could perform the work of industrial cleaner, DOT 381.687-018, which includes duties such as cleaning, maintaining grounds, and transporting materials by truck or hand truck. An ALJ may consider activities of daily living. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility

analysis." *Burch*, 400 F.3d at 681. Here, the objective medical evidence does not completely support the severity of Zelaya's subjective symptoms.

When, as in this case, there is conflicting evidence, the ALJ must resolve the conflicts. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: October 7, 2013

ALICIA G. ROSENBERG
United States Magistrate Judge